<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSDWARD HERNANDEZ,<br><br>                          Plaintiff,<br><br>v.<br><br>CITY OF PATERSON, CHIEF IBRAHAM BAYCORA, OFFICER KEVIN PATINO, AND OFFICER "JOHN DOE" OF THE PATERSON POLICE DEPARTMENT,<br><br>                          Defendants. | Civil Action No. 22-6763 (SDW)(MAH)<br><br>**OPINION**<br><br>October 18, 2023 |

**WIGENTON**, District Judge.

Before this Court is Defendants City of Paterson (the "City"), Police Chief Ibraham Baycora ("Chief Baycora"), and Officer Kevin Patino's ("Officer Patino"), (collectively, "Defendants")[1] Motion to Dismiss[2] (D.E. 9 ("Motion")) Plaintiff Rosdward Hernandez's ("Plaintiff") Complaint (D.E. 1) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1367(a).  Venue is proper pursuant to 28 U.S.C. § 1391.  This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1.  For the reasons stated herein, the motion is **GRANTED in part and DENIED in part**.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiff's Arrest on November 26, 2020

---

[1] At all relevant times, Ibraham Baycora was the Chief of the Paterson Police Department and Kevin Patino was a police officer employed by the Paterson Police Department.  (D.E. 1 ¶¶ 10–11.)

[2] Plaintiff has also named Officer John Doe of the Paterson Police Department as a defendant.  Although courts may "allow claims based upon 'fictitious' defendants because they may be found and named later through the discovery process," *K.J. ex rel. Lowry v. Div. of Youth & Fam. Servs.*, 363 F. Supp. 2d 728, 740 (D.N.J. 2005) (citing *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004)), where Plaintiff has failed to plead facts sufficient to sustain a claim against any defendant, claims against fictitious defendants will be dismissed as well.

On November 26, 2020, Plaintiff Rosdward Hernandez, a teenager of Afro-Dominican descent was walking northbound on the sidewalk on Main Street in the City of Paterson, New Jersey, when he observed Officer Jenesis Lavezzari ("Officer Lavezzari") pushing an individual up against the wall adjacent to the sidewalk and detaining this person. (D.E. 1 ¶¶ 16–18.) Officer Lavezzari instructed Plaintiff to "go away." (*Id.* ¶ 19.) Plaintiff complied with her command and removed himself from the immediate vicinity of Officer Lavezzari, but he remained on the sidewalk to observe the incident with other witnesses. (*Id.* ¶¶ 19–20.) The record does not disclose how far Plaintiff walked to remove himself from the scene before stopping to continue to observe the incident.

Shortly after, a Paterson Police Department vehicle operated by Defendant Officer Patino arrived at the scene. (*Id.* ¶ 21.) Officer Patino, without giving any verbal command or warning, shoved Plaintiff in the chest multiple times. (*Id.* ¶ 22.) Plaintiff offered no resistance and walked to a parked car where other witnesses were standing. (*Id.* ¶ 23.) What drew Officer Patino's attention to Plaintiff remains unknown.

Officer Patino turned around and walked over to Officer Lavezarri and the individual being detained. (*Id.* ¶ 24.) About ten seconds later, Officer Patino returned to where Plaintiff was standing, approximately 30 or 40 feet away, and began pointing his finger in Plaintiff's face and screaming obscenities. (*Id.* ¶ 25.) Plaintiff attempted to de-escalate the situation and asked Officer Patino for an explanation for his behavior. (*Id.* ¶ 26.) At the same time, Plaintiff began to fear for his safety and slowly backed away from Officer Patino. (*Id.* ¶ 28.) Plaintiff never verbally or physically threatened any individual present at the scene during this incident. (*Id.* ¶ 27.)

Officer Patino then grabbed Plaintiff by his jacket and shoved him to the ground. (*Id.* ¶ 29.) While Plaintiff was on the ground, restrained by Officer Patino and two other officers, and

not resisting, Officer Patino struck him in the face and head a minimum of six times, causing him injuries.  (*Id.* ¶¶ 30–31.)  Plaintiff was then put in handcuffs and taken to St. Joseph's University Medical Center in a Paterson Police Department vehicle.  (*Id.* ¶¶ 33–34.)  Thereafter, Plaintiff was released into the custody of Officer Lavezzari, who drove Plaintiff to the police station.  (*Id.* ¶ 34.) While Plaintiff was in the back seat of the police vehicle, on the way to the police station from the hospital, Officer Patino allegedly drove up and yelled to Plaintiff, in sum and substance:  "That's what you get for trying to be a hero you fucking pussy."  (*Id.* ¶ 35.)

Officer Patino and other officers, including Defendant Officer "Doe," then allegedly submitted a Paterson Police Department Arrest Report that contained multiple falsehoods, including that Plaintiff "began clutching his fist and then began approaching [Officer Patino] in an aggressive manner," and that Plaintiff "struck this officer's chest with a closed fist, and continued to flail his arms."  (*Id.* ¶ 36.)  The false arrest report was allegedly made to cover up the fact that Officer Patino beat Plaintiff when he was unarmed, detained, and compliant.  (*Id.* ¶ 38.)  The arrest report was approved by an unknown Sergeant and communicated to the Passaic County Prosecutor's Office, resulting in the following criminal charges against Plaintiff in Passaic County Superior Court under docket number PAS-20-004423:

> a. 2C:29-2A(3)(A)—Resisting Arrest
> b. 2C:12-1B(5)(A)—Aggravated Assault on Law Enforcement Officer
> c. 2C:29-1A—Obstructing Administration of Law

(*Id.* ¶¶ 37, 39–40.)  Plaintiff's criminal matter is pending in Paterson Municipal Court under Complaint number 1608-S-2020-004032.[3]  (*Id.* ¶ 41.)  Due to the incident on November 26, 2020, Plaintiff suffered and continues to suffer from, *inter alia*, head trauma, traumatic brain injury,

---

[3] The record does not state whether Plaintiff's charges were presented to a grand jury for indictment nor how or when Plaintiff's criminal case went from the Superior Court of New Jersey in Passaic County to the Paterson Municipal Court, where his aggravated assault on law enforcement officer charge was downgraded to simple assault.  (D.E. 1 ¶¶ 40–41.)

injury to the left eye, multiple lacerations to the head and face, dizziness, headaches, trouble concentrating, and psychological and emotional injuries. (*Id.* ¶ 47.)

## B.  Subsequent Misconduct by and Indictment of Officer Patino

On December 14, 2020, less than three weeks after Plaintiff's arrest, Officer Patino was involved in a similar incident and was accused of beating and fabricating charges against another person of color, Osama Alsaidi ("Alsaidi"). (*Id.* ¶ 42.)  The entire incident was captured on video and, subsequently, the United States Attorney's Office for the District of New Jersey indicted Officer Patino for the Alsaidi incident in early 2022 for civil rights violations and falsification of records. (*Id.* ¶¶ 43–44.)  This prosecution is pending in this District under Docket No. 22-CR-0031. (*Id.* ¶ 44.)  Alsaidi and his attorneys allegedly filed a complaint with the Internal Affairs Division ("IAD") of the Paterson Police Department, which did not investigate the incident or take any disciplinary action against Officer Patino until a public outcry ensued. (*Id.* ¶ 45.)  Due to the Paterson Police Department IAD's inability or unwillingness to conduct adequate oversight over its officers, the Passaic County Prosecutors Office assumed responsibility for the internal affairs functions of the Paterson Police Department in April 2021. (*Id.* ¶ 46.)

## C.  Procedural History

On November 25, 2022, Plaintiff filed the instant suit against Chief Baycora, Officer Patino, Officer John Doe, and the City, asserting common law tort claims under the New Jersey Tort Claims Act ("NJTCA" or "the Act") (Counts I to IV and VI), and constitutional claims for violations of the New Jersey Constitution under the New Jersey Civil Rights Act ("NJCRA") (Count VIII) and for violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the

United States Constitution under 42 U.S.C. § 1983 and § 1985 (Counts V[4] to VII and IX to XI). (*See* D.E. 1 at 13–22.)

## II.    __LEGAL STANDARD__

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a showing, rather than a blanket assertion, of an entitlement to relief" (internal quotation marks and citation omitted)).

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citation omitted).  A court, however, need not accept as true allegations that are "recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  (citation omitted)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the

---

[4] Plaintiff withdrew Count V for deprivation of his constitutional rights.  (D.E. 17 at 8.)

pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*  Moreover, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

### III.   DISCUSSION

The Complaint asserts tort claims under the NJTCA and constitutional claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the NJCRA for violations of Plaintiff's rights pursuant to the United States and New Jersey Constitutions.

To state a claim under § 1983, a plaintiff must allege facts showing that (1) he was deprived of "rights, privileges, or immunities" afforded him under the United States Constitution or other federal law, and (2) "the conduct complained of was committed by a person acting under color of state law." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *see* 42 U.S.C. § 1983.[5]  Section 1983 does not create any substantive rights; it merely provides a means to redress violations of federal law committed by state actors.  *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Meanwhile, § 1985(3) provides a remedy against private conspiracies and conspiracies by state actors.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993).  Section 1985(3) creates a private right of action for persons injured by a conspiracy formed "for the purpose of

---

[5] Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).

Civil claims for deprivation of or interference with a person's rights guaranteed by the laws and Constitutions of New Jersey and the United States can be asserted by way of the NJCRA.  N.J. Stat. Ann. 10:6-1 *et seq.*; *see Gormley v. Wood-El*, 93 A.3d 344, 358 (N.J. 2014) ("Section 1983 applies only to deprivations of federal rights, whereas [the NJCRA] applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws.").  Because the NJCRA is interpreted analogously to § 1983, this Court's § 1983 analysis controls Plaintiff's NJCRA claims (Count VIII) as well.[6]  *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (noting that the NJCRA "was modeled after 42 U.S.C. § 1983"); *Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014) (stating that the NJCRA is "a state law analogue to Section 1983") (footnote omitted).

The NJTCA provides for limited circumstances under which a plaintiff may bring a tort claim against public entities and public employees.  *See* N.J. Stat. Ann. 59:1-1 *et seq.*; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (stating that sovereign immunity bars suits against a State or its officials without its consent).  Generally, "[e]xcept as otherwise provided by [the NJTCA], a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  N.J. Stat. Ann. 59:2-

---

[6] The NJCRA provides that

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. 10:6-2(c).

1(a).  Under one such exception, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment . . . ."  N.J. Stat. Ann. 59:2-2(a).  A public employee, however, is not liable for "acts in good faith in the execution or enforcement of any law."  N.J. Stat. Ann. 59:3-3.

Defendants move to dismiss all claims in the Complaint under Rule 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted.  Defendants make the following additional arguments in support of their Motion:  (1) Plaintiff's state tort claims must be dismissed because Plaintiff did not timely file a notice of tort claim pursuant to the NJTCA; (2) all claims against Chief Baycora and Officer Patino ("Individual Defendants") in their official capacities are duplicative of the claims against the City; (3) the City is not liable for the intentional torts of Officer Patino; and (4) Plaintiff cannot recover punitive damages from the City.  This Court will address each of Defendants' arguments in turn.

### A.  Compliance with the NJTCA (Counts I to IV and VI)

As a threshold matter, Defendants argue that the common law tort claims (Counts I to IV and VI) are time-barred because Plaintiff fails to show that the City timely received his notice of tort claim ("Claim Notice") within the 90-day period prescribed by the NJTCA.  N.J. Stat. Ann. 59:8-8.  This argument is unpersuasive because it is not what the Act requires.[7]  Nevertheless, Plaintiff has not adequately shown that he timely filed his Claim Notice on the face of the Complaint, so his tort claims are dismissed without prejudice.[8]

---

[7] A plaintiff must also meet other requirements under the NJTCA before a tort claim may be filed against a public entity or employee.  *See* N.J. Stat. Ann. 59:8-1 *et seq.*  This Court, however, need not address whether Plaintiff has met the other provisions of the NJTCA to rule on the Motion, and Defendants have raised no other issues regarding Plaintiff's compliance with the other requirements of the NJTCA.

[8] The Complaint, in an ambiguous fashion, appears to also allege state tort claims for false arrest and false imprisonment in Count VI.  *See Ptaszynski v. Uwaneme*, 853 A.2d 288, 294 (N.J. Super. Ct. App. Div. 2004) (stating that false arrest and false imprisonment are intentional torts under New Jersey state law).  To the extent that Plaintiff alleges tort claims in Count VI, they are also dismissed without prejudice together with Counts I to IV.

The NJTCA prescribes certain procedures a plaintiff is required to follow prior to filing a tort claim against a public entity or employee.[9]  Specifically, the Act requires a claimant to file a Claim Notice with the entity being sued within 90 days of the tort claim's accrual.  N.J. Stat. Ann. § 59:8-8; *see Tripo v. Robert Wood Johnson Med. Ctr.*, 845 F. Supp. 2d 621, 626 (D.N.J. 2012).  The Act provides a limited exception to the 90-day requirement if the claimant can show, "within one year after the accrual of his claim," both "extraordinary circumstances," which prevented the timely filing of the Claim Notice, and that the defendant is not "substantially prejudiced" by a later filing.  N.J. Stat. Ann. § 59:8-9.  A plaintiff is "forever barred from recovering against a public entity or public employee" if they fail to file a Claim Notice within the time required or if "[t]wo years have elapsed since the accrual of the claim."  N.J. Stat. Ann. § 59:8-8.

There are two ways a plaintiff can "present" a Claim Notice to the public entity:  either by delivery or certified mail.  N.J. Stat. Ann. 59:8-10.  "The claim shall be deemed to have been presented and received *at the time of the deposit*."  N.J. Stat. Ann. 59:8-11 (emphasis added).  The New Jersey Appellate Court has interpreted "time of deposit" to be the time of mailing, holding that "the giving of notice by certified mail [is] complete and deemed received within time upon deposit or mailing, with the appropriate postage prepaid, within 90 days of the accrual of the claim."  *Guzman v. City of Perth Amboy*, 518 A.2d 758, 762 (N.J. Super. Ct. App. Div. 1986).  The *Guzman* Court thus explained that "even though receipt by the public entity may be after [] 90 days, the actual date of mailing of the certified mail notice is controlling under the Act."  *Id.* at 763; *see also Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 698 (N.J. Super. Ct. App. Div. 1998) ("Notice which is neither delivered nor mailed by certified mail fails to comply with

---

[9] The NJTCA provides "[e]xcept as otherwise provided in this section, no action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter."  N.J. Stat. Ann. § 59:8-3.

the statute, and there is no presumption of receipt on mailing by ordinary mail."). *Guzman* also

held that "[t]here is no statutory requirement that a return receipt be obtained." 518 A.2d at 761.

The New Jersey Supreme Court has instructed courts to undertake "a sequential analysis"

to determine whether a Claim Notice has been timely filed. *Beauchamp v. Amedio*, 751 A.2d 1047,

1051 (N.J. 2000). First, a court must "determine when the claim accrued." *Id*. "[I]n the case of

tortious conduct resulting in injury, the date of accrual will be the date of the incident on which

the negligent act or omission took place." *Id.* at 1050. Second, if the date of accrual is ascertained,

a court then must "determine whether a notice of claim was filed within ninety days." *Id.* at 1051.

If not, a court must then "decide whether extraordinary circumstances exist justifying a late

notice." *Id.*

Turning to the issue of whether Plaintiff timely filed his Claim Notice, the parties do not

dispute that Plaintiff's tort claims accrued on November 26, 2020, when he suffered his injuries.

(*See* D.E. 17 at 4.) Next, the Complaint alleges that a "Claim Notice was duly served upon and

filed with the [City]" on February 24, 2021. (D.E. 1 ¶ 12.) This allegation, however, lacks factual

support.

Plaintiff attached to their Opposition Brief a Claim Notice dated February 24, 2021, and a

certified mail receipt addressed to the Paterson Police Department and postmarked on the same

date to prove that the Claim Notice was timely filed. (D.E. 17-1 at 3–9 ("Ex. A").) The Third

Circuit, however, has made clear that in deciding a motion to dismiss, "a court must consider only

the complaint" and "exhibits attached to the complaint." *Belichick*, 605 F.3d at 230. Therefore,

the materials attached to Plaintiff's brief cannot be considered.

Having reviewed the Complaint, this Court concludes that Plaintiff has not made a facially

plausible showing that the Claim Notice was timely deposited with the post office via certified

mail as required by the NJTCA.  The Complaint also does not provide any facts to show "extraordinary circumstances" that would justify a late filing of a Claim Notice.  Therefore, Counts I to IV and VI are dismissed without prejudice.

**B.  Section 1985 Conspiracy Claim (Count VII)**

Defendants seek to dismiss Count VII, arguing that Plaintiff has not sufficiently pled a § 1985(3) conspiracy claim.

To establish a § 1985 conspiracy claim, a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983).  "[A]ll of these elements must be pleaded with adequate specificity to give notice of the nature of the conspiracy alleged."  *Downey v. Coal. Against Rape & Abuse, Inc*., 143 F. Supp. 2d 423, 446 (D.N.J. 2001), *aff'd*, 142 F. App'x 645 (3d Cir. 2005) (citing Fed. R. Civ. P. 9(b)).  Additionally, a plaintiff must allege facts that plausibly suggest "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" to state a claim.  *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (emphasis omitted) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Here, the Complaint lacks any allegation of racial or class-based invidious discriminatory animus.  For this reason alone, Count VII must be dismissed under Rule 12(b)(6).  To the extent Count VII attempts to hold the City liable for conspiracy under the theory of *respondeat superior* (D.E. 1 ¶ 105), it is also dismissed because liability under § 1985 cannot be based on *respondeat superior*.  *See Johnson v. City of Clifton*, No. 20-20118, 2023 WL 4248859, at *6 (D.N.J. June 29,

2023) (citing *Di Maggio v. O'Brien*, 497 F. Supp. 870, 875–76 (E.D. Pa. 1980) ("[T]he *Monell* analysis that liability under [§] 1983 cannot be predicated on *respondeat superior* applies with equal force to [§] 1985.")).

Accordingly, Count VII is dismissed without prejudice. Insofar as Count VII seeks to hold the City liable under the doctrine of *respondeat superior*, it is dismissed with prejudice.

### C.  Section 1983 False Arrest and False Imprisonment Claims (Count VI)[10]

Defendants move to dismiss Plaintiff's false arrest and false imprisonment claims brought under § 1983.[11]  The Complaint has sufficiently alleged false arrest and false imprisonment claims against Officer Patino.  The City, however, cannot be liable for intentional torts under *respondeat superior*.  *See Johnson*, 2023 WL 4248859, at *6.  Therefore, Count VI may proceed against Officer Patino only.

"The Fourth Amendment prohibits arrests without probable cause." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).  To state a claim for false arrest in violation of the Fourth Amendment, a plaintiff must allege that (1) there was an arrest, and (2) the arrest was made without probable cause.  *Dowling v. Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).  "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge

---

[10] The Complaint appears to be asserting a municipal liability claim against the City in Count VI as it states that Plaintiff "was arrested in the absence of probable cause, at the direction of, or under practices, policies or customs promulgated by" the City.  To the extent that Plaintiff is seeking municipal liability in Count VI, it is duplicative of Count XI and will be dismissed with prejudice.

[11] The Complaint ambiguously brings the same claims under "New Jersey State Law."  To the extent the claims in Count VI are also brought under the NJCRA and NJTCA, this Court's § 1983 analysis controls because "courts apply the same standard for false arrest and false imprisonment under both § 1983, NJCRA and New Jersey common law." *Ianuale v. Keyport Twp*., No. 15-8256, 2016 WL 5955527, at *7 (D.N.J. Oct. 13, 2016) (citing cases).

The elements of a common law false arrest claim are:  (1) "an arrest or detention of [plaintiff] against his or her will" and (2) "lack of proper legal authority or legal justification."  *Mesgleski v. Oraboni*, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000) (internal quotation marks and citation omitted).  A common law claim for false imprisonment requires the plaintiff to show that he was arrested or detained against his will without proper legal authority or justification.  *Leang v. Jersey City Bd. Of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009).

are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). The validity of an arrest is determined under the law of the state where the arrest occurred. *Id.* Therefore, a plaintiff must set forth "the facts [showing that, under the] circumstances within [the officer's] knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested." *Mosley v. Wilson*, 102 F.3d 85, 94–95 (3d Cir. 1996). Typically, "the question of probable cause in a [§] 1983 damage suit is one for the jury." *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998).

Furthermore, where an officer lacks probable cause to effectuate an arrest, a plaintiff also has a separate claim under § 1983 for false imprisonment based on his detention pursuant to that arrest. *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). To state a claim for false imprisonment, a plaintiff must establish that (1) he was detained; and (2) the detention was unlawful. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682 (3d Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)).

Here, Plaintiff's version of events supports a plausible inference that Plaintiff was arrested without probable cause. Plaintiff alleges that:  he obeyed Officer Lavezzari's instruction to "go away" and removed himself from the scene where Officer Lavezzari detained another person; after Officer Patino arrived at the scene, he turned to Plaintiff, who was standing 30 or 40 feet away, and began verbally abusing Plaintiff and pointing his finger in Plaintiff's face; Plaintiff attempted to de-escalate and slowly backed away from Officer Patino; Officer Patino grabbed Plaintiff by his jacket, shoved him to the ground, and restrained Plaintiff with two other officers; and Plaintiff

offered no resistance and was then placed in handcuffs and into a Paterson Police Department vehicle.  (D.E. 1 ¶¶ 19–33).

Taking Plaintiff's allegations as true, this Court finds that a reasonable officer could not have believed that a crime had been or was being committed by Plaintiff.  Defendants argue that Officer Patino had probable cause because Plaintiff failed to obey Officer Lavezzari's instruction to "go away" (D.E. 9 at 12), but Defendants do not explain why Officer Patino would have reasonably believed that Plaintiff was guilty of a crime.  *See Schneyder*, 653 F.3d at 323 ("For probable cause to exist, the evidence available must provide police . . . with reasonable grounds to believe that the person to be arrested is guilty of a crime.").  There is no evidence of probable cause to justify Plaintiff's arrest on the face of the Complaint and Defendants have not shown otherwise. Thus, Plaintiff has sufficiently pled a false arrest claim.

Turning to Plaintiff's false imprisonment claim, as previously stated, the Complaint has sufficiently alleged that Plaintiff was detained and arrested by Officer Patino without probable cause.  *See Bailey v. United States*, 568 U.S. 186, 200 (2013) (finding that a person "handcuffed, transported in a marked patrol car" is considered to be detained by the police).

To the extent the Complaint asserts common law false arrest and imprisonment claims against the City, as stated previously, the City cannot be liable for its employees' intentional tortious acts.  Accordingly, Defendants' motion to dismiss Count VI is denied with the exception that the intentional tort claims against the City in Count VI are dismissed with prejudice.

### D.  Section 1983 Excessive Force Claim (Count IX)[12]

---

[12] The Complaint asserts an excessive force claim in Count IX under "42 U.S.C. § 1983 and New Jersey State Law." (D.E. 1 at 18).  Because Plaintiff asserts the same § 1983 claims under the NJCRA in Count VIII, to the extent that Count IX brings a common law excessive force claim, it is dismissed with prejudice as it is duplicative of Plaintiff's assault and battery claims.  *See Hill v. Algor*, 85 F. Supp. 2d 391, 411 (D.N.J. 2000) ("Where a police officer uses excessive force in effectuating an arrest, that officer may be liable for assault and battery.").

Defendants argue that Plaintiff's excessive force claim must be dismissed for being "vague, non-specific, and conclusory." (D.E. 9 at 16.) This argument is without merit as Plaintiff has sufficiently alleged an excessive force claim against Officer Patino under § 1983.

Excessive force claims arising out of "an arrest, investigatory stop, or other 'seizure' are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). Therefore, to state an excessive force claim, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)).

The test of reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham*, 490 U.S. at 396. It is a fact-specific inquiry and courts take into account factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Additional relevant factors include physical injury to the plaintiff, the possibility that the suspect is violent or dangerous, "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 206, 209–11 (3d Cir. 2007).

Applying these factors to the factual allegations, the Complaint raises a facially plausible claim that Officer Patino's use of force during Plaintiff's arrest was objectively unreasonable under the totality of the circumstances. Plaintiff alleges that Officer Patino grabbed his jacket and shoved

him to the ground despite that Plaintiff did not verbally or physically threaten any person at the scene of the incident.  (D.E. 1 ¶¶ 27–29.)  Plaintiff further alleges that Officer Patino struck him in the face and head at least six times while he was restrained on the ground by Officer Patino and two other officers and put up no resistance.  (*Id.* ¶¶ 30–31.)  Moreover, the Complaint provides photographic evidence of Plaintiff's injuries.  (*Id.* Ex. A.)

In addition, the reasonableness test is a fact-intensive inquiry depending on the totality of circumstances, and it would be premature to dismiss the claim at this stage.  *See Kopec v. Tate*, 361 F.3d 772, 778 n.7 (3d Cir. 2004) (denying summary judgment "[w]here, as here, a plaintiff alleges actual injury inflicted by a police officer in the course of an arrest, and supports his allegation with specific facts so that it cannot be said as a matter of law that the use of force was objectively reasonable").  Accordingly, Plaintiff's § 1983 excessive force claim may go forward.

### E.  Section 1983 Fabrication of Evidence and Fair Trial Claims (Count X)

In Count X, Plaintiff brings two separate claims under § 1983 alleging that Officers Patino and Doe communicated a false police report containing "numerous fabrications" to the Passaic County Prosecutor's Office, which resulted in criminal charges against Plaintiff in Passaic County Superior Court and deprived him of his right to a fair trial.  (D.E. 1 ¶¶ 36–40, 122–26.)  Defendants move to dismiss Count X, arguing that the Complaint has failed to state a claim upon which relief may be granted.  Because Plaintiff has not sufficiently alleged a valid claim in Count X, Count X will be dismissed without prejudice.

A § 1983 claim cannot survive a motion to dismiss if Plaintiff fails to allege that Defendants caused or committed a violation of a right secured by the Constitution or laws of the United States.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  The Third Circuit has stated that "the filing of a false police report is not itself a constitutional violation," *Jarrett v. Twp. of Bensalem*, 312 F. App'x

16

505, 507 (3d Cir. 2009) (citing cases), even when the report is the result of an intentional conspiracy among police officers to cover up police misconduct. *Bush v. City of Philadelphia*, No. 98-0994, 1999 WL 554585, at *4 (E.D. Pa. July 16, 1999) ("[C]onspiracy by police officers to file false reports and otherwise cover up wrongdoing by fellow officers is not in and of itself a constitutional violation. It provides the basis for a § 1983 action only if it results in some constitutional harm to the plaintiff.").

A plaintiff may, however, bring a "stand-alone claim for fabrication of evidence" under § 1983 based on the Fourteenth Amendment under two circumstances. *Black v. Montgomery Cnty.*, 835 F.3d 358, 369 (3d Cir. 2016) (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 288–96 (3d Cir. 2014)). First, the plaintiff was "convicted at a trial at which the prosecution used fabricated evidence," and "there is a reasonable likelihood that, without the use of that evidence, [he] would not have been convicted." *Halsey*, 750 F.3d 273, 294 (3d Cir. 2014). Second, the plaintiff was acquitted and "there is a reasonable likelihood that, absent that fabricated evidence, [he] would not have been criminally charged." *Black*, 835 F.3d at 371.

Here, the Complaint does not sufficiently allege that Plaintiff suffered an injury as a result of the false police report as Plaintiff conceded that his criminal case has not resulted in a conviction or acquittal. Plaintiff relies on *Black* to support his arguments, but *Black* is inapposite here because the Third Circuit made clear that "[t]he harm it was concerned with in *Halsey*" was "corruption of the *trial process*." *Black*, 835 F.3d at 370 (emphasis added). Moreover, Plaintiff does not cite any binding case law to support the conclusion that he may bring a stand-alone fabrication of evidence claim prior to the commencement of trial proceedings.[13] For these reasons, Plaintiff's fabrication of evidence claim will be dismissed without prejudice.

---

[13] While *Halsey* states in dicta that "if fabricated evidence is used as a basis for a criminal charge that would not have been filed without its use[,] the defendant certainly has suffered an injury," 750 F.3d at 294 n.19, it also instructed

Plaintiff's right to a fair trial claim suffers for the same reason.  "To prevail on a § 1983 claim predicated on the right to a fair trial, the plaintiff must show that the government's alleged pretrial misconduct resulted in an unfair trial."  *See Anderson v. Venango Cnty., Pa.*, 458 F. App'x. 161, 165 (3d Cir. 2012) (citing cases).  Plaintiff's case is pending and has not been tried.  As a result, he has not yet been denied his right to a fair trial.  The fair trial claim will therefore be dismissed without prejudice.

### F. Section 1983 and NJCRA Claims Against Chief Baycora and Officer Patino in Their Official Capacities Are Duplicative

Defendants argue that all claims that seek to hold the Individual Defendants liable in their official capacities should be dismissed as duplicative of the municipal liability claims.  This argument has merit to the extent that the same § 1983 and NJCRA official-capacity claims against the Individual Defendants are also brought against the City.  Accordingly, Plaintiff's official-capacity claims under § 1983 and NJCRA[14] should be dismissed with prejudice as duplicative of municipal liability claims against the City.

A § 1983 suit against a government official in his or her official capacity "represent[s] only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  An official-capacity suit therefore should "be treated as a suit against the [public] entity."  *Id.* at 166.  Accordingly, where claims against an officer in his official capacity are duplicative of claims against the municipality, those claims will be properly dismissed as redundant.  *See e.g.*, *Cuvo v. De Biasi*, 169 F. App'x. 688, 693 (3d Cir. 2006)

---

courts to not "use [the *Halsey*] opinion beyond the scope of our holding."  *Id.* at 295.  Therefore, this Court declines to apply the quoted dicta to the analysis in this opinion.

[14] The Complaint asserts Count XIII—violation of the NJCRA—against "defendants" but fails to specify which defendants.  For the sake of clarity, this Court assumes that both Officer Patino and Chief Baycora are sued in their official capacities under Count XIII.

(affirming the District Court's dismissal of the claims against the officers in their official capacity as redundant "because a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them").  This rule also applies to official-capacity claims brought under the NJCRA.  *See Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 132 (D.N.J. 2017) (dismissing NJCRA claims against a police chief in his official capacity as "duplicative of municipal liability claims").

Here, claims against the Individual Defendants in their official capacities are entirely duplicative of the municipal liability claims against the City as a matter of law.  The official-capacity claims are premised upon the same allegations as the municipal liability claims.  Accordingly, the Court will dismiss with prejudice the official-capacity claims against Chief Baycora in Counts VIII and X.  Official-capacity claims against Officer Patino in Counts VI, VIII, IX, and X will be dismissed with prejudice as well.

### G.  Municipal (*Monell*) Liability and Supervisory Liability (Count XI)

Defendants move to dismiss Count XI, which seeks to hold the City liable for unconstitutional policies and customs and the failure to train its officers under § 1983.  Count XI also appears to, but does not explicitly, state a supervisory liability claim against Chief Baycora.  Because Plaintiff has not sufficiently alleged a supervisory claim or a *Monell* claim, Defendants are entitled to dismissal of Count XI.

#### i.     *Municipal (Monell) liability*

In a federal civil rights action, municipal liability may not be founded on the theory of *respondeat superior*.  *Monell*, 436 U.S. at 691.  Instead, a plaintiff must identify a municipal "policy" or "custom" that caused the injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 397, (1997).  First, "policy is made when a 'decisionmaker possess[ing] final

authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  Custom, on the other hand, can be demonstrated "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz*, 915 F.2d at 850 (citations omitted).  A plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries, and he may do so by "demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

For failure-to-train claims involving police officers, however, a plaintiff does not need to allege an unconstitutional policy. *Id.* (citing *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation . . . under § 1983."")).  Instead, a plaintiff must show that a city's failure to train its officers "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (footnote omitted).  A plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation[;] (2) the situation involves a difficult choice or a history of employees mishandling[;] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff has not pled a municipal policy or custom of engaging in the specific kinds of constitutional violations alleged in the Complaint.  For example, Plaintiff does not allege that a municipal decisionmaker with "final authority" to make policy issued an "official proclamation,

policy, or edict" about the use of excessive force or the practice of arrest without probable cause. *Andrews*, 895 F.2d at 1480.  Similarly, Plaintiff does not allege that the Individual Defendants have maintained a "well-settled and permanent" course of unconstitutional conduct that was the proximate cause of his injuries.  *Bielevicz*, 915 F.2d at 850.  Because the Complaint provides no more than legal conclusions that the Individual Defendants acted and conspired against Plaintiff to violate his constitutional rights pursuant to the City's customs and policies (D.E. ¶¶ 96, 104, 129, 130, 140), Plaintiff's *Monell* claim will be dismissed without prejudice.

This Court reaches the same conclusion with respect to Plaintiff's failure-to-train and failure-to-supervise claims.  The Complaint does not contain a single factual allegation describing the manner in which the hiring, training, or supervision of police officers was inadequate.  It also fails to allege any of the elements for deliberate indifference set forth in *Roman*, supra—for example, policymakers' knowledge of a difficult situation in which ad hoc judgment calls by officers had often given rise to constitutional deprivations in the past, or would be very likely to do so in the future.  In particular, the Complaint fails to plead any facts tending to suggest that the City had knowledge of a pattern of unconstitutional conduct in effectuating an arrest by inadequately trained officers.  *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Plaintiff unsuccessfully attempts to show a pattern of abuse by alleging that Officer Patino was criminally indicted for his conduct in the Alsaidi incident, and that the Paterson Police Department failed to investigate this incident after receiving a complaint from Alsaidi.  (D.E. 1 ¶¶ 42–46.)  These allegations, however, are insufficient to show the City's deliberate indifference to a pattern of unconstitutional conduct because the Complaint provides no information on how the

Alsaidi incident is similar to Plaintiff's other than that they are both persons of color and that Officer Patino allegedly beat and fabricated charges against both of them.  Plaintiff also claims that "[s]ince 2016, at least ten (10) Paterson Police Officers have been charged federally for constitutional violations" but provides no information about the nature or circumstances of the alleged charges or what deficiencies had existed in the City's police training program that resulted in these charges.  (*Id.* ¶ 136.)  In sum, this Court is unable to draw a plausible factual inference of deliberate indifference on the face of the Complaint.  Therefore, the City is entitled to dismissal of Count XI.

  ii.    *Supervisory liability*

  "There are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations."  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (second alteration in original).  The Complaint fails to allege a supervisory liability claim under either theory.

  First, as discussed previously, the Complaint does not adequately plead a municipal policy or custom of engaging in the specific kinds of constitutional violations alleged therein.  For the same reason, Plaintiff has not alleged a viable supervisory liability claim against Chief Baycora under the first theory.

  Under the second theory, allegations of "actual knowledge and acquiescence" must be made with "appropriate particularity."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  The Complaint contains scarcely any factual allegations about Chief Baycora, except that he "was,

22

at all relevant times, the Police Chief" and "occupied a supervisory position in relation to [Officer Patino] . . . and the other involved Officers."  (D.E. 1 ¶¶ 11, 131.)  While it is possible that Chief Baycora could have known and acquiesced to a practice or custom of officers engaging in unconstitutional conduct, the Third Circuit has made clear that "'possibility' is no longer the touchstone for pleading sufficiency after *Twombly* and *Iqbal*.  Plausibility is what matters.  Allegations that are 'merely consistent with a defendant's liability' or show the 'mere possibility of misconduct' are not enough."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010).  Thus, these allegations are simply not enough to permit the Court to draw a plausible inference of knowledge and acquiescence on the part of Chief Baycora.  Accordingly, Plaintiff's supervisory liability claim will be dismissed without prejudice.

### H.  Punitive Damages

Finally, Defendants move to strike Plaintiff's request for punitive damages.  Plaintiff seeks punitive damages against all Defendants under his state and federal claims.  (*See* D.E. 1 ¶¶ 1–2.)  Because punitive damages against a municipality and officials in their official capacity are not available under § 1983 or the NJTCA, Plaintiff is not entitled to punitive damages against the City and the Individual Defendants in their official capacities.

The propriety of punitive damages is determined by a plaintiff's proofs, and therefore, dismissal of punitive damages claims at the motion to dismiss stage is generally premature.  *See Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 512 (D.N.J. 1999) (denying motion to dismiss non-barred punitive damages claims as premature).  "If, however, the asserted causes of action expressly bar the imposition of punitive damages, dismissal at this stage would be appropriate." *Id.*

Municipalities are immune from punitive damages under § 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), and the NJTCA.  *See* N.J. Stat. Ann. § 59:9-2 (providing no punitive damages "shall be awarded against a public entity").  Similarly, government officials, including police officers, are immune from liability for punitive damages when they are sued in their official capacity under § 1983.  *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988).  Therefore, punitive damages against the City and the Individual Defendants in their official capacity under § 1983 and the NJTCA will be stricken.

Government officials are liable for punitive damages when sued in their individual capacity, however, if a plaintiff can establish that "the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others."  *Keenan v. City of Philadelphia*, 983 F.2d 459, 470–71 (3d Cir. 1992) (citation omitted); *see Walker v. City of Newark,* No. 19-16853, 2020 WL 3542502, at *4 (D.N.J. June 30, 2020), as amended (July 1, 2020) (concluding that punitive damages are available against police officers in their individual capacities under the NJTCA, NJCRA and the Federal Civil Rights Act).  Therefore, Plaintiff may pursue punitive damages against the Individual Defendants.  Accordingly, the prayer for punitive damages remains operative as to the Individual Defendants in their individual capacities only.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion is **GRANTED in part and DENIED in part** as set forth below:

1. Counts I to IV (common law tort claims) are dismissed without prejudice.  To the extent that the Complaint alleges tort claims in Count VI, they are also dismissed without prejudice.

2.  Count VI (false arrest and false imprisonment) may go forward against Officer Patino only.  The City is entitled to dismissal of Count VI with prejudice.

3.  Count VII (conspiracy) is dismissed without prejudice.  Insofar as Count VII seeks to hold the City liable under *respondeat superior*, the City is entitled to dismissal of Count VII with prejudice.

4.  The NJCRA claims in Count VIII may go forward only insofar as they mirror the claims alleged in Counts VI and IX against Officer Patino.

5.  Count IX (excessive force) may go forward.

6.  Count X (fabrication of evidence and right to a fair trial) is dismissed without prejudice.

7.  Count XI (municipal liability and supervisory liability) is dismissed without prejudice.

8.  Official-capacity claims brought under § 1983 and the NJCRA are dismissed with prejudice as duplicative of municipal liability claims against the City.

9.  Punitive damages against the City and the Individual Defendants in their official capacities are stricken.

Plaintiff shall have thirty (30) days to file an amended complaint.  An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:           Michael A. Hammer, U.S.M.J.
              Parties