**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSDWARD HERNANDEZ, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PATERSON, CHIEF IBRAHAM BAYCORA, OFFICER KEVIN PATINO, AND OFFICER "JOHN DOE" OF THE PATERSON POLICE DEPARTMENT, <br><br> Defendants. | Civil Action No. 22-6763 (SDW) (MAH) <br><br> **OPINION** <br><br> October 8, 2024 |

**WIGENTON**, District Judge.

Before this Court is Defendants City of Paterson (the "City") and Paterson Police Department Chief Ibraham Baycora's ("Chief Baycora") (collectively "Defendants") Partial Motion to Dismiss (D.E. 41-1 ("Mot.")) Plaintiff Rosdward Hernandez's ("Plaintiff") Amended Complaint (D.E. 30 ("Amended Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, the motion is **GRANTED in part and DENIED in part.**

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

1

The Court refers to its prior opinion dated October 18, 2023 (D.E. 22 ("Op.")) for a fuller recitation of the broader factual background.

On December 18, 2023, Plaintiff filed an Amended Complaint asserting tort claims in violation of the New Jersey Tort Claims Act ("NJTCA") (Counts I to IV); false arrest and imprisonment (Count V); malicious prosecution (Count VI); violations of the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. §§ 10:6-1 and -2; excessive force (Count VIII); fabrication of evidence and violation of the right to a fair trial (Count IX); and municipal liability under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) (Count X). *See generally* D.E. 30. On March 1, 2024, Defendants the City of Paterson and Chief Baycora moved to dismiss Counts I to V, VII, IX, and X of the Amended Complaint. (D.E. 41.) The parties timely completed briefing. (D.E. 44; 47.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The pleading should "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). The analysis involves a two-step approach. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, the Court parses between the factual and legal elements of a claim, treating "all of the complaint's well-pleaded facts as true,"

but disregarding any legal conclusions.  *Id.*; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Second, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

When a plaintiff pleads factual content that enables the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," a claim has facial plausibility.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*  The Court considers "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Belichick*, 605 F.3d at 230 (citation omitted).

### III.  DISCUSSION

Plaintiff's Amended Complaint asserts tort claims under the NJTCA, constitutional claims under 42 U.S.C. §§ 1983, 1985, and the NJCRA for violations of Plaintiff's rights pursuant to the United States and New Jersey Constitutions.

Section 1983 provides a cause of action for the deprivation of constitutional rights by persons acting under color of state law.  *Torres v. Madrid*, 592 U.S. 306, 310 (2021).  For a § 1983 cause of action, a plaintiff must demonstrate that (1) "the conduct complained of was committed

by a person acting under color of state law" and (2) "the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *see* 42 U.S.C. § 1983.[1]  Section 1983 provides a means to redress violations of federal law committed by state actors.  *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

The NJCRA is the state law analogue to § 1983.[2] *Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014).  Given that the NJCRA "applies not only to federal rights but also to substantive rights guaranteed by" the state's Constitution and laws, *Gormley v. Wood-El*, 93 A.3d 344, 358 (N.J. 2014), this Court's § 1983 analysis will govern for claims brought under both § 1983 and the NJCRA.  *See Wang v. New Jersey State Police*, No. 18-11933, 2024 WL 3580671, at *16 (D.N.J. July 30, 2024) ("The NJCRA is interpreted nearly identically to § 1983 and claims under the NJCRA are generally coterminous with and subject to the same defenses and immunities as those brought under § 1983.") (citing *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011)).

---

[1] Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

[2] The NJCRA states:

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann § 10:6-2(c).

4

The NJTCA "delineates both procedural and substantive requirements for bringing a tort claim against the State, public entities, and public employees," while espousing the principle that "[g]enerally, immunity for public entities is the rule and liability is the exception." *Nieves v. Off. of the Pub. Def.*, 230 A.3d 277, 232 (N.J. 2020) (alteration in original) (quoting *Fluehr v. City of Cape May*, 732 A.2d 1035, 1038–39 (N.J. 1999)); *see* N.J. Stat. Ann. § 59:2-1(a). Under the statute, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment." N.J. Stat. Ann. § 59:2-2(a). Yet where a public employee "acts in good faith in the execution or enforcement of any law," he or she is not liable. N.J. Stat. Ann. § 59:3-3.

Defendants move to dismiss Plaintiff's common law tort, false arrest and imprisonment, and municipal liability claims under Rule 12(b)(6), arguing the Amended Complaint fails to state a cause of action for relief for said claims.[3] (Mot. at 8.) They also contend that: (1) Plaintiff's state law tort claims against the City should be dismissed because the City cannot be liable for its employee's intentional acts; (2) Plaintiff has failed to cure the deficiencies in his negligent hiring, retention, and/or supervision claim; (3) this Court already dismissed various claims against the City with prejudice; and (4) Plaintiff's fabrication of evidence claim is belied by the dismissal of all charges against him.

### A.  Common Law Tort Claims (Counts I to IV)

Defendants argue that Plaintiff's common law tort claims should be dismissed as to the City because the City cannot be liable for an employee's intentional torts. (Mot. at 11.) Plaintiff withdraws his common law tort claims as to Defendants Baycora and the City. (Opp'n Br. at 13.)

---

[3] Plaintiff withdraws his claims of assault, battery, and intentional infliction of emotional distress as to Defendants Baycora and the City only. (D.E. 44 ("Opp'n Br.") at 8.)

5

Accordingly, Plaintiff's claims of assault, battery, and intentional infliction of emotional distress (Counts I to III) are dismissed as to the City and Baycora.[4]

Defendants also urge this Court to dismiss Plaintiff's negligent hiring, retention, and/or supervision claim because the Amended Complaint "fails to establish any specific factual allegations or legal basis" to hold the City liable. (Mot. at 11.) Defendants construe Plaintiff's statement that there is a "lack of publicly available information regarding [Defendant] Patino's prior misconduct," (Opp'n Br. at 9–10), as an admission that "it will take discovery to provide facts to [Plaintiff's] conclusory statements," (D.E. 47 ("Reply") at 3).

A claim asserting negligent hiring, retention, and/or supervision is premised on an employer's direct fault, not on a vicarious liability theory. *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019). An employer is liable for negligent hiring if the plaintiff demonstrates that (1) the employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could have reasonably foreseen that such qualities created a risk of harm to other persons" and (2) the employee's "incompetence, unfitness or dangerous characteristics proximately caused the injury." *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982); *see K.G.G.*, 210 A.3d at 916 (stating that the same inquiry applies to a negligent supervision or training claim, but "framed in terms of supervision or training"). An employer can be liable under a negligent hiring theory for employee conduct that falls outside the scope of employment. *Id.*

This Court finds that Plaintiff's negligent hiring, retention, and/or supervision claim has facial plausibility. Plaintiff's Amended Complaint references the indictment of multiple Paterson Police Officers, as early as 2016, for constitutional violations such as the use of excessive force. *See* Amended Compl. ¶¶ 135–43. Notably, Plaintiff's Amended Complaint includes a March 27,

---

[4] Similarly, Plaintiff withdraws his conspiracy claim under 42 U.S.C. § 1985 given this Court's prior dismissal of said claim. (Opp'n Br. at 11; Op. at 11–12.) Plaintiff's conspiracy claim is dismissed with prejudice.

2023 press release from the New Jersey Office of the Attorney General ("AG") explaining the AG's decision to immediately assume control of "all police functions, including internal affairs investigations." (D.E. 31-2, Ex. C at 1.) The latter facts, taken as true and coupled with Plaintiff's allegations that Officer Patino and other officers fabricated a police report with "a version of events that absolved P[atino] of any wrongdoing," (Amended Compl. ¶ 36), suggest that the City knew or should have known of Officer Patino's unfitness, incompetence, or dangerous attributes; it was reasonably foreseeable that said qualities created a risk of harm to Paterson residents—including Plaintiff; and that as a result of the City's negligent hiring, retention, and/or supervision, Officer Patino's unfitness, incompetence, or dangerous attributes caused Plaintiff's injuries. *See Denis v. City of Newark*, 704 A.2d 1003, 1007–08 (N.J. Super. Ct. App. Div. 1998) (finding the defendant police department "knew or should have known" of a police officer's dangerous propensities given two unprovoked acts of violence on members of the public noted in his personnel file pre-dating the plaintiff's alleged assault); *Simonson v. Formisano*, No. 20-20480, 2021 WL 2221328, at *5 (D.N.J. June 1, 2021) (concluding the plaintiff sufficiently stated a negligent supervision claim given allegations that the defendant was aware of the officer's deteriorating mental state but permitted the officer to retain his service weapon); *Est. of del Rosario v. Paterson Police Dep't*, No. 14-5167, 2015 WL 1759473, at *5 (D.N.J. Apr. 17, 2015). Therefore, this Court denies Defendants' motion to dismiss Count IV. Plaintiff may conduct pointed discovery, as there may be discoverable information pertinent to the Paterson Police Department's ("PPD") hiring, retention, and/or supervisory practices.

    **B. Section 1983 False Arrest and False Imprisonment Claims (Count V)**

Plaintiff continues to assert a claim for false arrest and false imprisonment under § 1983 and "New Jersey State Law." Defendants seek to dismiss this claim as against the City given this

7

Court's prior decision dismissing said claim with prejudice. In opposition, Plaintiff contends that because liability on a false arrest and false imprisonment claim does not depend on an officer's state of mind and can be premised on mere negligence, his claim should stand.

Previously, this Court dismissed Plaintiff's false arrest and false imprisonment claim with prejudice after finding it duplicative of Plaintiff's *Monell* liability claim. (Op. at 12 n.10.) The Amended Complaint continues to reference the City's "customs, usages, practices, procedures," or some variation thereof, which is akin to a municipal liability claim. (Amended Compl. ¶¶ 89, 96.) This Court again finds that Count V is duplicative of Count X. Further, the City cannot be held liable for the intentional tort of false imprisonment. *See Casciano v. City of Paterson*, No. 19-9475, 2022 WL 170857, at *5 (D.N.J. Jan. 19, 2022) (dismissing a false restraint and imprisonment claim against the defendant city because it was an intentional tort); *Prunkel v. Cnty. of Bergen*, No. 17-5154, 2017 WL 5483165, at *4 (D.N.J. Nov. 15, 2017) (finding that even if § 1983 and the NJCRA applied, the plaintiff's false imprisonment and other intentional torts claims would be dismissed with prejudice because the defendant city could not "be held liable for intentional torts"); *Beam v. Twp. of Pemberton*, No. 19-20380, 2023 WL 2496460, at *29 (D.N.J. Mar. 14, 2023) ("Intentional infliction of emotional distress, battery, false imprisonment, abuse of process, and malicious trespass are intentional torts.") As such, this Court grants Defendants' motion to dismiss Count V asserted against the City; Plaintiff's false arrest and false imprisonment claim is dismissed with prejudice.

**C. Section 1983 Fabrication of Evidence and Fair Trial Claims (Count IX)**

Defendants contend that Plaintiff fails to set forth factual allegations supporting his fabrication of evidence and right to a fair trial claims. Moreover, Defendants point out that all charges against Plaintiff have been dismissed, such that Count IX cannot go forward. Because

Plaintiff's criminal case was dismissed and did not go to trial, his fabrication of evidence and right to a fair trial claim is dismissed with prejudice.

Under the Fourteenth Amendment's due process clause, "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors . . . if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016). In *Black*, the Third Circuit explained that its concern is with the "corruption of the *trial process*," such that the fabrication's harm "is corrupting regardless of the outcome *at trial* or the particular time in the proceeding that the corruption occurs." *Id.* at 370–71 (emphasis added). For a right to a fair trial claim, a plaintiff must show that "the government's alleged pretrial misconduct resulted in an unfair trial." *Anderson v. Venango Cnty., Pa.*, 458 F. App'x 161, 164–65 (3d Cir. Jan. 18, 2012) (citing cases).

As this Court explained in its prior decision, *Black* is inapposite here because Plaintiff's criminal case did not result in a conviction or acquittal. (Op. at 17.) As previously found, Plaintiff's Amended Complaint fails to adequately allege that he suffered an injury as a result of the false police report filed by Defendant Patino. The criminal charges against Plaintiff have been dismissed. (Amended Compl. ¶ 123.) *See Guzman v. City of Newark*, No. 20-6276, 2023 WL 373025, at *10 (D.N.J. Jan. 23, 2023) (dismissing the plaintiff's fabrication of evidence claim with prejudice where "[t]he charges brought against [p]laintiff for the 2014 Incident and the 2016 Incident were dismissed before a trial even occurred"); *McCoy v. Scott*, No. 23-21272, 2024 WL 3580662, at *3 (D.N.J. July 29, 2024) (dismissing the plaintiff's fabrication of evidence claim because it was premature since the plaintiff had yet to go to trial). Plaintiff has not suffered the

9

requisite injuries to bring a fabrication of evidence and right to fair trial claim. Thus, Count IX is dismissed with prejudice.

### D. Municipal (*Monell*) Liability and Supervisory Liability (Count X)

Defendant moves to dismiss Plaintiff's municipal liability claim, arguing that Plaintiff fails to identify a municipal policy, practice or custom, let alone show how any policy, practice, or custom caused his injury. Defendant claims the Amended Complaint fails to establish how the City knew or should have known of officers' dangerous propensities, and similarly, how Chief Baycora knew or should have known the PPD's training programs were deficient.

#### i. Municipal Liability

In a § 1983 action, although a municipality cannot be held liable under a *respondeat superior* theory, it may be held liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. To survive a motion to dismiss, a plaintiff must not only allege a policy, practice, or custom[5] violative of constitutional rights, but must also allege that said policy or custom "was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). "[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

---

[5] "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

A municipality's failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The failure to train must not only reflect "a deliberate indifference to whether the alleged constitutional deprivations occurred," but must also have a causal nexus to the plaintiff's injuries. *Reitz*, 125 F.3d at 145. To adequately plead deliberate indifference, a plaintiff must show: "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798 (alterations in original) (citing *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011)).

Here, Plaintiff's Amended Complaint contains sufficient factual content that enables the Court to draw "the reasonable inference that the defendant[s are] liable for the misconduct alleged," and thus allows Count X to survive Defendants' motion to dismiss. *See Connelly*, 809 F.3d at 786 (quoting *Iqbal*, 556 U.S. at 678). Plaintiff's Amended Complaint alleges that the PPD had "a systemic and documented history of aggressive police practices," which the City turned a blind eye to, thereby "creating a *de facto* policy" which "encouraged or tolerated" the conduct. (Amended Compl. ¶¶ 130–31.) Plaintiff points to several facts to support his allegations concerning deliberate indifference and a failure to train: the indictment of at least ten Paterson Police Officers for constitutional violations, going as far back as 2016; the 2019 indictment of "the Robbery Squad"—a group of seven PPD Officers—for conspiring to deprive Paterson residents of their civil rights through illegal stops, thefts, and the gratuitous use of violent and excessive force; the Passaic County Prosecutor's assertion of control over the PPD's Internal Affairs Division ("IAD") for seventeen months, beginning in April 2021; and the AG's seizure of the PPD as of March 2023. (*Id.* ¶¶ 132–143.) Plaintiff further alleges that these incidents put Defendants on

11

notice "of the rampant constitutional abuses" and that the IAD's failure to hold officers accountable or to take action to prevent future abuses amounted to deliberate indifference or acquiescence. (*Id.* ¶¶ 144–50, 154–56.)

Regarding custom, "it is logical to assume that [the City's] continued official tolerance of repeated misconduct facilitate[d] similar unlawful actions in the future," which led to the conduct at issue in this case, at least in part. *See Roman*, 914 F.3d at 799 (alterations in original) (quoting *Bielevicz*, 915 F.2d at 851). Plaintiff has provided sufficient factual support to support his allegation that the PPD has a history of constitutional violations and that Defendants Baycora and the City were aware of them, but acquiesced. *See Roman*, 914 F.3d at 799–800; *Bielevicz*, 915 F.2d at 852 (finding that evidence that the defendant city had an unwritten policy of ignoring complaints about a widespread abuse supported the plaintiffs' claim that the police department's existing procedures were not adequately addressing a known problem).

The AG's seizure was borne out of "strife" and "a crisis in confidence in law enforcement in the City of Paterson," resultant from "a number of events and concerns relating to the [PPD]." (D.E. 31-2, Ex. C at 2–3.) In the press release, the AG explained that his goal in effectuating the seizure was to "provid[e] the officers on the force the support, resources, supervision, and training they need to be an exemplary police department." (*Id.* at 2.) Thus, this Court also draws the permissible inference that the AG's seizure of the PPD "was necessary because of Department-wide failures." *See Roman*, 914 F.3d at 800. It follows that Plaintiff's allegations regarding Defendants' deliberate indifference and failure to train and supervise are strong enough to survive this motion to dismiss.

### ii. Supervisory Liability

Supervisors may be found liable on two different theories. *A.M. ex rel J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first, a supervisor may be liable if "with deliberate indifference to the consequences, [he or she] established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989).[6] Alternatively, a supervisor may be liable "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M.*, 372 F.3d at 586 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). Supervisory liability cannot be premised on a *respondeat superior* theory. *See Iqbal*, 556 U.S. at 677 ("In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer.") "Knowledge in a 'failure to supervise' claim must consist of either 'contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents.'" *Murphy v. Middlesex Cnty.*, 361 F. Supp. 3d 376, 387 (D.N.J. Jan. 17, 2019) (quoting *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000)).

As discussed above, Plaintiff presents adequate allegations demonstrating a protracted pattern of constitutional violations by PPD Officers. That Defendant Baycora was Chief of the PPD during the course of the alleged constitutional violations is salient, particularly when combined with the assertions that Chief Baycora was aware or should have been aware, but was instead deliberately indifferent to the unconstitutional conduct of the PPD's Officers—including

---

[6] A plaintiff proceeding under the first theory must "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ," (2) show that "the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk[,] and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001).

13

Defendant Patino. (Amended Compl. ¶¶ 11, 149, 156.) *See A.M.*, 372 F.3d at 586 ("[G]iven our conclusion . . . that A.M. presented sufficient evidence to prevent the grant of summary judgment on whether the child-care workers were deliberately indifferent to A.M.'s constitutional rights, we believe summary judgment in favor of their supervisors was inappropriate."); *White v. City of Vineland*, 500 F. Supp. 3d 295, 308 (D.N.J. 2020); *Capps v. Dixon*, No. 19-12002, 2021 WL 2024998, at *6 (D.N.J. May 21, 2021) (holding the plaintiff's supervisory liability claim against police chief could proceed where the plaintiff alleged the chief had knowledge of the history of use of force complaints and was responsible for reviewing said complaints). Thus, this Court concludes Plaintiff sufficiently alleges supervisory liability.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion is **GRANTED in part and DENIED in part** as set forth below:

1. Counts I to III (intentional torts) are dismissed as to Defendants the City and Baycora.
2. Count IV (negligent hiring, retention, and/or supervision) may go forward.
3. Count V (false arrest and false imprisonment) is dismissed with prejudice as against the City.
4. As previously decided, Count VI (§ 1985 conspiracy) is dismissed with prejudice as to the City.
5. Count IX (fabrication of evidence and right to a fair trial) is dismissed with prejudice.
6. Count X (municipal liability) may go forward.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
      Michael A. Hammer, U.S.M.J.